Petitioner discharged, with costs against the officer seizing him.
Cited: In re Bradshaw, post, 383; In re Sowers, post, 386; Walton v.Gatlin, post, 318, 323; Harkins v. Cathey, 119 N.C. 663; McDonald v.Morrow, ib., 672.
Note: Judge MANLY was absent during the greater part of the term on account of sickness, and did not participate in the consideration of any of the cases of habeas corpus decided at this term.
The facts are: John N. Irvin, being liable as a conscript under the act of April, 1862, offered in July, 1862, one Gephart as his substitute. Gephart was 36 years of age, and in all respects a fit and sufficient substitute for the war, and was accepted by Major Mallett, commander of conscripts, who thereupon gave Irvin an absolute discharge.
The petitioner avers he is advised that the conscription acts are unconstitutional; but it is not necessary for the purpose of this case to decide the question.
It is admitted that, under the regulations of the War Department, Major Mallett had full authority to accept substitutes and give discharges; but it is insisted that Irvin's discharge was afterwards, by the action of Congress, rendered of no effect; for the act of September, 1862, makes all persons between the ages of 35 and 45 liable as conscripts; so Gephart became liable as a conscript, by reason whereof he was no longer a sufficient substitute; and thus Irvin's discharge had no further effect. If one who is at the time liable as a conscript should be offered and accepted as a substitute, it may be conceded the discharge obtained in that way would be void, because no consideration is received by the Government, and the officer exceeds his authority. So, if after the conscription act of April one who is under 18 years of age is offered and accepted as a substitute, it may be conceded that the discharge would only be of effect until the substitute arrives at the age of 18; for as it was known to the parties that the substitute himself would become liable at that date under a law then in force, it will be presumed that the contract and discharge were made in reference to that state of things, and after the substitute arrives at the age of 18 the consideration fails, and the officer had no authority to grant a discharge for a longer time.
But in our case there was at the time no law in force under which it was known to the parties that the substitute would afterwards be himself liable as a conscript; on the contrary, he was in all respects fit and sufficient substitute for the war, and was accepted as such, and an absolute discharge given, so there was full consideration received by the Government and full authority on the part of the officer. The question is, Does the subsequent action of Congress, to wit, the act of September, 1862, by its proper construction and legal effect, repudiate and make void the contract and discharge?
The construction of acts of Congress, so far as the rights of citizens, as distinguished from the military regulations, are concerned, is matter for the courts.
Whether Congress has power to pass an act expressly making liable to conscription persons who have her to fore furnished substitutes and received an absolute discharge, is a question not now presented, and one which, I trust, public necessity never will cause to be presented, as it would violate natural justice and shock the moral sense.
In my opinion, the act of September, 1862, by its proper construction, does not embrace men who were before bound, as substitutes, to serve during the war. It is true, the act in general words gives the President power to call into military service all white men, residents, etc., between the ages of 35 and 45; but this manifestly does not include men who are already in military service for the war, for this plain reason: there was no occasion to include them — they were bound before; and the true meaning and intent of the act is to increase the army by calling into service men who were not before liable. Suppose the act contained a provision giving a bounty of $500 to all men called into service under its operation, or providing that such conscripts should not be ordered out of their own respective States, would it be imagined that men who had previously volunteered for the war, or were substitutes for the war, would be entitled to the extra bounty, or to the special privilege of remaining in their own States? Certainly not, because there was no need of legislation in order to make soldiers of them.
A decent respect for our lawmakers forbids the courts from adopting a construction which leads to the conclusion that it was the intention, by the use of general words, to include within the operation of the act substitutes who were already bound for the war not for the purpose of affecting them, but for the indirect purpose of reaching parties who had furnished substitutes, and in that way asserting a power which is at least doubtful, and certainly involves repudiation and a want of good faith.
As the conscription act does not include substitutes, the conclusion that Gephart is no longer sufficient as a substitute, and that Irvin's discharge is of no further effect, fails.
It is considered by me that John N. Irvin be forthwith discharged, with liberty to go wheresoever he will.
It is further considered that the costs of this proceeding, allowed by law, be paid by James Irvin (the officer arresting the petitioner), to be taxed by the clerk of the Superior Court of Rockingham County, according to the statute in such cases made and provided.
The clerk will file the papers in this proceeding among the papers of his office. R. M. PEARSON, Ch. J. S.C.
At Richmond Hill, 9 July, 1863.
* IN RE MERONEY.
The facts of this case bring it within the decision In re Irvin, ante, 60. That decision is put on the ground that the conscription act of September, 1862, does not embrace substitutes; and so the questions growing out of the regulations prescribed by the War Department, "where a substitute becomes subject to military service, the exemption of the principal shall expire," was not presented.
It seems to me that any one accustomed to judicial investigation cannot read the act and fail to come to the conclusion that it does not embrace volunteers and substitutes who were already bound to serve for the war. A different construction is excluded by the words used, and is inconsistent and repugnant to its provisions.
The President is authorized "to call out and place in military service
all white men, etc." The words "call out" and "place in military service"
are not applicable to men who are already in the military service for the war; no legislation was necessary to make soldiers of them. If only a part is called for, provision is made for taking "those who are between the age of 35 and any other age less than 45." Can this be applicable to volunteers and substitutes? It is further provided that "those called out under this act, and the act to which it is an amendment, shall be first and immediately ordered to fill to their maximum number the companies, battalions, etc., from the respective States, etc., the surplus, etc." This supposes that the volunteers and substitutes composing the companies are to remain in the field, and the companies and battalions are to be filled up by those who are ordered into service under the conscript act.
Again, how can the regulation that all conscripts are to be sent to camps of instruction be applicable to volunteers and substitutes? Are they to be taken from the army and sent to camps of instruction? Certainly not, because they are not called out and placed in the military service under the conscription acts, but are bound for the war by the force of the original contracts of enlistment.
I am informed that, soon after the conscription act of April, a regulation was made for the discharge of all volunteers for the war who were over the age of 35; and under it many were discharged; but the regulation was revoked, the War Department becoming satisfied that the act by its true construction did not apply to men who were bound by the terms of enlistment to serve for the war. This is the same construction given by me to the act. Under it all volunteers and substitutes, whether over or under 35 or 45, are to continue in service, because they are not embraced by the conscription acts. I can see no reason why this construction should not be followed to the further consequence, that as substitutes are not embraced by the conscription acts, and do not become subject to military service as conscripts, the fact necessary to the application of the regulations of the War Department does not exist; consequently, the question that may grow out of that regulation is not presented.
It is said the arrest of Meroney was ordered in disregard of the decision In re Irvin, because the Secretary of War does not consider the construction given to the conscription act of September "a sound exposition of the act." The inquiry naturally suggests itself, Who made the Secretary of War a judge? He is not made so by the Constitution; Congress has no power to make him a judge, and has, by no act, signified an intention to do so. It is true, for the purpose of carrying acts of Congress into effect, the Secretary of War, in the first place, puts a construction on them, but his construction must be subject to the judiciary; otherwise, our form of government is subverted — the constitutional provision by which the legislative, executive, and judicial departments of the Government are separate and distinct is violated, and there is no check or control over the executive.
According to the view taken by me, it is not necessary, for the purpose of this case, to decide upon the legal effect of the regulations prescribed by the Secretary of War in regard to receiving substitutes; but as those regulations are relied on as authorizing the arrest of the petitioner, it is proper for me to say that many objections entitled to consideration may be urged to the power of the Secretary of War to make the regulations in question. The enactment under which it is assumed that the power to make a regulation that "in all cases where a substitute becomes subject to military service the discharge of the principal shall expire," comes within the scope of the power confided by Congress, in section 8 of the conscription act April, 1862, in these words: Persons not liable for duty may be received as substitutes for those who are, under such regulations asmay be prescribed by the Secretary of War.
The obvious construction of this section seems to be: substitutes may be received on two conditions, one implied, to wit, the substitute must be an able-bodied white man, fit for military service in the field; the other expressed, to wit, the substitute must be a person who is not liable to military duty under the existing law; the time, place, and manner ofreceiving substitutes, in which is included the mode of deciding whether he is an able-bodied white man not liable to duty, to be regulated by rules prescribed by the Secretary of War.
If the regulation in question be confined to cases where the substitute, being under the age of 18, afterwards arrives at that age and becomes
liable to military duty, it accords with the provision of the act. But if it be extended to cases where the substitute is not at the date of the contract of substitution liable to duty, but is afterwards made liable by a subsequent act of Congress, it departs from and goes beyond the provisions of the act by adding a third condition, and the power to do so may well be questioned; especially where the regulation as well as the act of Congress which is supposed to give it application are both subsequent to the contract of substitution and the discharge is absolute on its face. For illustration, suppose a regulation to be prescribed that in all cases where the substitute is killed or disabled, or where he deserts, the discharge shall expire, which stand on the same footing with the regulation that the discharge shall expire if the substitute is made liable to duty by a subsequent act of Congress, for all add a third condition to the two imposed by the act, and it may be urged against them that the power to add other conditions than those contained in the enactment is an act oflegislation which Congress has no right to delegate to a department of the executive branch of the Government, and of course an intention to do so can only be inferred from plain and direct words, and the words, in this instance, are satisfied by the construction stated above.
The same question of construction is presented In re Huie, from Cabarrus County, under a clause in the exemption act which exempts all persons who shall be held unfit for military service in the field under rules to beprescribed by the Secretary of War, where the power is confined to making rules to ascertain whether the person is or is not fit for military service in the field, and it is decided that the act does not confer power to prescribe a rule under which a citizen may be taken as a conscript, although held unfit for military service in the field, on the ground that he may answer some purpose in the hospitals, etc. These instances tend to show the wisdom of the constitution in not confiding legislative, judicial, and executive powers to any one department.
I am of opinion that the petitioner is entitled to exemption.
Therefore, it is considered by me that P. P. Meroney be forthwith discharged, with leave to go wherever he will. It is further considered that the costs of this proceeding, allowed by law, to be taxed by the clerk of the Superior Court of Rowan County, according to the act of the General Assembly, be paid by Jesse McLean (the enrolling officer).
The clerk will file the papers in this proceeding among the papers in his office and give copies. R. M. PEARSON, Ch. J. S.C.
At Richmond Hill, 4 July, 1863.
(66)